**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| FITISTICS, LLC, | ) | |
| | ) | Case No. 1:16-cv-00112-GBL-JFA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIK B. CHERDAK, ESQ., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| ERIK B. CHERDAK, | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FITISTICS, LLC, | ) | |
| | ) | |
| Counterclaim Defendant | ) | |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF OWNERSHIP IN
INTELLECTUAL PROPERTY, BREACH OF CONTRACT,
BREACH OF FIDUCIARY DUTY, CONVERSION, AND FRAUD**

COMES NOW the Plaintiff, Fitistics, LLC ("**Fitistics**"), by and through counsel, and as

and for its Amended Complaint against Defendant Erik B. Cherdak, Esq., states as follows:

**THE PARTIES**

1.      Fitistics is a Connecticut Limited Liability Company having headquarters at 83

Northwood Rd, Newington CT  06111.

2.      Fitistics is informed and believes, and based thereon alleges, that at all relevant

times Defendant Eric B. Cherdak, an individual, has been residing in Maryland at the address

identified in the caption hereinabove.

## JURISDICTION AND VENUE

3.       This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201.  This is a dispute between citizens of different states where the matter in controversy substantially exceeds $75,000.00.

4.       This Court may exercise personal jurisdiction over Defendant because he regularly conducts business within the Commonwealth of Virginia and this judicial district, and a substantial portion of the wrongs alleged against Defendant have occurred within the Commonwealth of Virginia and this judicial district.  At various times in 2014 and 2015, Defendant has represented that he has an office in this judicial district.  On information and belief, Defendant will not dispute that personal jurisdiction is proper over him in this Court.

5.       Venue is proper in this Court under 28 U.S.C. § 1391(b).  A substantial part of the events, acts, and missions giving rise to this action occurred in this district.  Defendant conducts substantial business in this district and has a substantial presence here.  On information and belief, Defendant will not dispute that venue here is proper.

## FACTS COMMON TO ALL COUNTS

6.       In or about June 2013, Fitistics entered into a confidential patent assignment agreement ("**Agreement**") with the Defendant, Erik B. Cherdak, the specific terms of which are confidential, at present.

7.       Under the Agreement, Defendant is required to pay to Fitistics certain sums of money after the occurrence of certain events and provide Fitistics information and documents pertaining to those events.

2

8.      Events have occurred and that, consequently, amount(s) of money significantly in excess of $100,000.00 are and have been due to be paid by Defendant to Fitistics.

9.      Fitistics has demanded the amounts of money due, to no avail.

10.      Defendant has intentionally failed to pay the amounts due by him to Fitistics and, thus, has materially breached the Agreement.

11.      Defendant has also materially breached the Agreement by refusing to disclose material information to Fitistics that he is obligated to disclose under the Agreement, including but not limited to information and documents relating to transactions involving certain intellectual property that is the subject of the Agreement ("**the IP**") and the amounts due and owing by him to Fitistics.  Fitistics has repeatedly demanded the information from the Defendant, to no avail.

12.      Fitistics is the true and rightful owner of the IP.  As of no later than January 16, 2016, Defendant has refused to acknowledge that Fitistics owns the IP.  Defendant denies Fitistics' claim of rights in and ownership of the IP.  Defendant claims to own the IP himself. Defendant refuses to deliver to Fitistics any instrument, written document, or other acknowledgement of Fitistics' ownership of the IP.

13.      The IP is valuable.  Defendant has expressed to Fitistics his belief that the IP is worth millions of dollars.  To date, Defendant has made separate demands against various third parties based on the value of licensing the IP that have totaled millions of dollars.

14.      Defendant has held himself out to third parties, and continues to hold himself out to third parties, as the owner of the IP.

3

15.     Defendant has engaged, and is continuing to engage, in activities designed to derive income for Defendant based on his erroneous claim of ownership of the IP.

16.     Although Fitistics owns the IP, Defendant has erroneously publicly represented himself as qualified to enforce rights pertaining to the IP in this jurisdiction.  Defendant has pursued litigation to enforce the IP on a pro se basis in this jurisdiction.  Although Defendant is an attorney, he is not licensed to practice law in this jurisdiction.

17.     On information and belief, when Defendant and Fitistics negotiated and entered into the Agreement, Defendant had no present intention to honor several of the material promises and statements he made, including that he would timely provide and disclose important information and documents to Fitistics and timely pay Fitistics amounts due under the Agreement.  Instead, on information and belief, Defendant, a seasoned patent attorney and litigator, intended to use and rely on litigation-related rules and processes, such as protective orders and rules pertinent to discovery of confidential information, to obfuscate and hide the fact that payments would become due and that important information and documentation exists which Fitistics would be entitled to see.

18.     In 2013, when the parties were negotiating and before they entered into the Agreement, Defendant represented that he intended to monetize the IP to Fitistics' benefit by pursuing licensing deals with several entities, including Nike, Apple, and Amer Sports. Defendant represented that he had a good relationship with counsel for these entities based on his prior dealings with them and has also represented to Fitistics that if Defendant were to take over ownership of the IP, neither Nike, Apple, or Amer Sports (or any other company) would benefit

4

from any license rights based on Defendants past dealings with such companies related to his now expired patents.

19.     In 2013, when the parties were negotiating and before they entered into the Agreement, Defendant represented that he viewed market and legal conditions to be very conducive for pursuing enforcement of the IP, that he would be able to focus his time and efforts on pursuing enforcement and monetization of the IP to Fitistics' benefit, and that he did not intend to pursue more than five or six legal actions for past infringement of his own expired patents, which otherwise could detract from his ability to pursue enforcement of the IP.

20.     Defendant has repeatedly assured Fitistics that he was trustworthy and acting aboveboard.  For example, in 2013, when the parties were negotiating the Agreement Defendant stated in an email that he had made proposed changes to the draft Agreement because he was "looking out for" Fitistics.

21.     Before the Agreement was executed, Defendant assured Fitistics that he would properly account for his expenses and provide information and documentation of those expenses sufficient to confirm their accuracy and to allow an audit of Defendant's activities relating to the IP and his dealings undertaken for Fitistics' benefit.

22.     Before the Agreement was executed, Defendant concealed and misrepresented facts about a "Confidential Settlement and Non-Exclusive License Agreement" that he had entered into with Garmin International, Inc. ("**Garmin agreement**") in the summer of 2013. When he negotiated and entered into that previous Garmin agreement, Defendant falsely represented to Garmin that he already owned the Fitistics IP that became the subject of the

Agreement.  Defendant did not inform Fitistics that he had made such false representations to Garmin.

23.     In the Garmin agreement, Defendant purported to agree to license to Garmin the IP that Fitistics later assigned to Defendant.  Defendant did not inform Fitistics that he already had purported to license the IP to Garmin before the Agreement was finalized and executed.  He did not disclose his communications with Garmin or related materials, such as draft agreements.

24.     Pursuant to the Garmin agreement, Garmin paid, and Cherdak received, $90,000. Cherdak received this money before the parties executed the Agreement assigning the IP to Cherdak.  Cherdak did not disclose to Fitistics his receipt of this money or pay Fitistics any portion thereof.

25.     On information and belief, at the time he made the representations and promises identified in Paragraphs 17-21 above, Defendant had no intention to fulfill those promises or act consistently with the representations.

26.     The purpose of making the false representations was to induce Fitistics to enter into the Agreement and to allow Defendant to obtain record title to the IP and to keep any monies he would collect in the future for himself.

27.     Fitistics reasonably relied upon, and had a right to rely upon, the false representations, and would not have entered the Agreement without such reliance on the misrepresentations.

28.     As set forth herein below, after the 2013 execution of the Agreement, Defendant made many material misrepresentations and intentionally concealed material information from Fitistics with an intent to deceive Fitistics on a routine basis.

6

29.     Before and after entering into the Agreement and acquiring record title to the IP, Defendant has received amounts of money related to the IP, and either deliberately has failed to inform Fitistics of that fact or has stated that he has not received such amounts.

30.     On February 18, 2014, Defendant represented to Fitistics' principal that he "will never stand in the middle of any money issues between you, Fitistics, or me, or otherwise," and that any money due "will be directly distributed to you personally by any defendant in any case." He also represented he would "endeavor to provide quarterly distribution sheets drawn relative to each pending case" in order to "enable [Fitistics' principal] to have running tallies of costs expended by [Defendant] in advance of any particular case."  And Defendant represented that he would endeavor to provide information regarding any cost he incurred in excess of $1,000 relating to enforcing the IP.

31.     On December 13, 2014, Defendant stated to Fitistics that "I want to add the new patent to that case", referring to a lawsuit Defendant had already filed in the Eastern District of Virginia against Snap Fitness on October 21st, 2014 (case no. 2:14-cv-00537).  Defendant voluntarily dismissed with prejudice his action against Snap Fitness on or around January 8, 2015.  To date, Defendant has not provided any license agreement, settlement agreement, or similar document relating to Snap Fitness licensing the IP or benefiting from a covenant not to sue related to the IP.

32.     On December 17, 2014, Defendant sent Fitistics a copy of a non-final license agreement for a Texas Based company, PT Fit Redefined LLC (a Koko Fitclub Franchisee). This license agreement version that was sent to Fitistics was not fully executed by PT Fit

Redefined.  To date, Defendant has not provided Fitistics any final, fully executed license

agreement with PT Fit Redefined LLC as it relates to licensing of the IP.

33.     On January 16, 2015, Defendant filed a patent infringement lawsuit against

Starwoods Hotels & Resorts Worldwide, Inc. ("**Starwoods**") in the United States District Court

for the Eastern District of Virginia (case number 1:15-cv-0072).  In or around March 2015,

Defendant entered into a settlement agreement relating to the IP with Starwoods.  On March 13,

2015, Defendant voluntarily dismissed the case against Starwoods.  Defendant thereafter on

several occasions from April 2015 through November 2015 represented that he had only

received a small percentage of the final settlement amount due from Starwoods, and that the

remaining substantial settlement payment would be forthcoming to Fitistics.

34.     Defendant also refused to provide the Starwoods settlement agreement, despite

numerous requests for a copy of that agreement from Fitistics.  Defendant's representations

regarding the status of the Starwoods' non-payment and related circumstances were knowingly

false.  While he told Fitistics the Starwoods settlement was for $200,000.00, comprised of an

initial payment of $20,000.00 and a later payment of $180,000.00, the Starwoods deal in fact did

not provide for any such second payment.

35.     On March 3, 2015, Defendant reassured Fitistics' principal that Defendant "will

never be disloyal."  On information and belief, this was a false statement.

36.     On March 13, 2015, Defendant filed a lawsuit against Marriott International, Inc.

("**Marriott**") in the U.S. District Court for the Eastern District of Virginia, case number 2:15-cv-

00106.  That case involved the IP.  The filing of that case triggered discussions between

Defendant and Marriott's vendors of cardio exercise equipment that had been asserted to be used to infringe the IP.

37.     On April 13, 2015, Defendant represented to Fitistics that the law firm Morgan, Lewis & Bockius LLP contacted Defendant representing Life Fitness (a Brunswick company), further stating that Life Fitness was interested in obtaining a license under the IP.  Defendant further represented to Fitistics that LifeFitness "want[s] to license" the IP and that Life Fitness' interest in licensing the IP was "Fo Real."

38.     On April 20, 2015, Defendant provided licensing scenarios to Fitistics that he was contemplating granting Life Fitness as it relates to Life Fitness exercise equipment products, as well as license rights that might also be extended to Life Fitness customers under the entire IP portfolio.  To date, excepting responding to discovery in this case, Defendant has not provided any license agreement, settlement agreement, or similar document relating to Life Fitness (Brunswick or Life Fitness's customers) licensing the IP or benefiting from a covenant not to sue related to the IP.

39.     On April 21, 2015, Defendant represented to Fitistics that he was "late in getting a draft term sheet over to Disney."  To date, Defendant has not provided any license agreement, settlement agreement, or similar document relating to Disney licensing the IP or benefiting from a covenant not to sue related to the IP.

40.     On April 25, 2015, Defendant represented that he intended to "cut a deal with Marriott for modest deal and collect that from every hotel chain in the United States."

41.     In April 2015, Defendant represented to Fitistics that LifeFitness "want[s] to license" licensing the IP.  To date, excepting discovery responses in this case, Defendant has not

provided any license agreement, settlement agreement, or similar document relating to the IP and involving LifeFitness.

42.     On May 27, 2015, Defendant represented to Fitistics that Technogym (an exercise equipment vendor for Marriott) "wants a license sooner than later" to the IP.  Defendant also represented to Fitistics that Technogym "wants a number that will put the [Marriott] case to bed" and also that Technogym wants "a license that is broad, covers all products, and includes all patents in family".  Defendant further represented to Fitistics that Technogym is "very hot to reach an agreement as Marriott is currently in their buying cycle".  To date, excepting discovery responses in this case, Defendant has not provided any license agreement, settlement agreement, or similar document relating to Technogym licensing the IP or benefiting from a covenant not to sue related to the IP.

43.     On July 20, 2015, an Order to Show Cause was issued in the Marriott case relating to a failure to effectuate service of process.

44.     On August 14, 2015, Defendant represented to Fitistics that he intended to file a paper in the Marriott case, by which he referred to an effort to avoid dismissal.  On information and belief, this was a knowingly false statement.

45.     On August 15, 2015, Defendant stated he wanted to amend the complaint in the Marriott case.  On information and belief, this was a knowingly false statement.

46.     On August 17, 2015, the case against Marriott was dismissed without prejudice for failure to effectuate service.

47.     On August 19, 2015, Defendant told Fitistics that he would give Matrix Fitness (a Johnson Health Tech company) "a sweet deal….and establish a reasonable royalty structure for

10

the hotel market".  Defendant also told Fitistics that "we will own the world…from all angles" as it relates to the licensing and monetization of the IP.

48.     On August 19, 2015, Defendant told Fitistics that he was following up with Starwoods regarding payment of the settlement amount.

49.     On August 20, 2015, Defendant represented that Fitistics would receive its share of money from the settlement with Starwoods by or before September 15, 2015, which according to Defendant would "give[s] money time to clear, me to write final dist notice and money to clear for you."  These statements were knowingly false when made.

50.     On August 28, 2015, Defendant forwarded a response email Defendant received from a high level executive (President of Development) from Noble House Hotels & Resorts Inc. (Noble House) to Fitistics, where the email said Noble House was in receipt of a letter the Defendant sent to them from the Defendant for a claim of Patent infringement related to the IP and that they (Noble House) was interested in setting a time to discuss the matter with the Defendant.

51.     On August 30, 2015, Defendant sent Fitistics a term sheet he prepared for Nobel House Hotels & Resorts Inc, which included two options for consideration related to taking a license under the IP.  To date, Defendant has not provided any license agreement, settlement agreement, or similar document relating to Noble House Hotels & Resorts Inc. licensing the IP or benefiting from a covenant not to sue related to the IP.

52.     On September 3, 2015, referring to Marriott's liability exposure relating to the IP, Defendant stated, "I have Marriott front and center . . . because of service offerings performing the claimed methods" of the IP, and called this "huge."

11

53.     Later on September 3, 2015, Defendant stated that he did not intend to license Marriott, but that he "will use them [i.e., Marriott] to advance elsewhere."

54.     On September 9, 2015, Defendant stated that he had a phone call scheduled with Marriott on September 10, 2015, related to Marriott's interest in taking a license related to the IP. On information and belief, this statement about his call with Marriott was knowingly false when made.

55.     On September 10, 2015, Defendant stated that his call with Marriott went 'OKAY'.  He further stated that Matrix Fitness (equipment vendor for Marriot) was threatening an IPR action (inter-partes review).  On information and belief, this statement about his call with Marriott was knowingly false when made.

56.     On September 10, 2015, Defendant promised that if by September 15, 2015 he had not received payment from Starwoods based on the settlement agreement, he would sue Starwoods.  This promise was knowingly false when made.

57.     On September 10, 2015, Defendant represented that he planned to refile the case against Marriott.  Defendant to date has not refiled the case against Marriott.

58.     On or about October 29, 2015, Defendant settled litigation involving the IP with Koko Fitclub, LLC ("**Koko**"), case number 1:14-cv-10371, in the United States District Court for the District Court of Massachusetts.  The case had been transferred from the Eastern District of Virginia, case number 1:13-cv-01166.

59.     Previously, on January 12, 2015, Defendant had stated that if he settled a pending litigation with Koko involving the IP, he would make Koko write a check directly to Fitistics. On information and belief, this statement was knowingly false when made.

60.     On November 6, 2015, Defendant told Fititics to "stand by for payment and paperwork" relating to the Koko settlement.

61.     On November 10, 2015, Defendant stated he would be making a "call in" and sending a "nasty letter" to Starwoods regarding its purported non-payment.

62.     On November 17, 2015, Defendant again stated that a "nasty gram" letter was "going out" to Starwoods.  No such letter has been sent to Starwoods.

63.     On November 17, 2015, Defendant stated that he would provide Fititics with copies of the Starwoods and Koko settlement agreements.  On information and belief, this statement was knowingly false when made.

64.     On November 19, 2015, Defendant stated that he would pay amounts due and owing to Fititics from the Koko deal by the next day, November 20, 2015, "in certified funds" in the form of a certified bank check made out to Fititics.  On information and belief, this statement was knowingly false when made.

65.     On November 23, 2015, Defendant stated that the Koko settlement check had cleared and promised to send, "likely tomorrow morning" by overnight delivery, materials and payment due and owing to Fititics.   On information and belief, these statements were knowingly false when made.

66.     Excepting discovery in this case, Defendant has never provided any fully executed Starwoods or Koko settlement agreements.  Excepting discovery in this case, Defendant also has not provided any fully executed license agreement that Defendant executed in our around December 2014 with PT Fit Redefined LLC.  Defendant has never paid Fititics any amount based on the Starwoods or Koko settlement agreements.  Defendant has never sued

13

Starwoods for breach of the settlement agreement.  Defendant has received the Koko settlement proceeds.  Defendant has received the Starwoods settlement proceeds.

67.     At the end of 2015, Defendant repeatedly ignored or deflected numerous requests from Fitistics for information relating to the Starwoods and Koko deals.

68.     Defendant's ongoing conduct of ignoring or deflecting requests for information were part of ongoing intentional efforts to conceal material facts relating to amounts of money and material information due and owing to Fitistics and to delay Fitistics' assertions of its rights relating to the IP.

69.     On January 13, 2016, Defendant stated that he would be sending "the other papers" (*i.e.*, documents relating to the Starwoods and Koko settlements) "early next week." Defendant did not send the documents the next week.

70.     Defendant also has claimed that he has a duty not to disclose information to Fitistics stemming from court orders or confidentiality agreements with third parties.  On information and belief, Defendant has either misrepresented his dealings with and duties to third parties regarding confidentiality, or has deliberately avoided taking normal steps to allow Fitistics access to the information, in order to conceal material information relating to the IP and monetization of same.  For example, on February 18, 2015, Defendant claimed that documents relating to negotiations with Starwood were confidential and that he would not be providing Fitistics with Starwoods-related documents because that would then result in Fitistics being obligated to provide those documents in response to a subpoena in the Koko litigation. However, in the Koko litigation Defendant himself was obligated, and eventually ordered by the U.S. District Court for the District of Massachusetts (Judge Indira Talwani), to produce the

14

Starwoods settlement agreement in discovery.  Despite this, Defendant has claimed he has no obligation to share the Starwoods agreement with Fitistics because it was "his confidential information."

71.     Defendant has intentionally overstated and misrepresented expenses that he has claimed as credits against amounts due and owing to Fitistics.  On information and belief, Defendant planned to do so from the inception of the Agreement.  For example, Defendant has claimed entitlement to over $2,000 in "Pacer charges" which is an unreasonable and, on information and belief, a false amount of expenses Defendant attributes to his activities of viewing and retrieving documents on Pacer, the electronic public access service for case and docket information of federal court cases.  Defendant wrongfully has claimed patent maintenance and revival fees as creditable expenses.  Defendant has claimed expenses related to experts that, on information and belief, Defendant knows to be inaccurate. Defendant has stated that he has made "out of pocket" payments to a particular technical legal expert, whereas of the date of this Complaint Fitistics is informed that Defendant has not made payments to that expert.

72.     In addition to the Starwoods and Koko deals (together totaling $50,000), discovery in this case has revealed that Defendant entered into numerous other agreements that purport to license the IP and/or grant covenants not to sue and releases based on the IP, including (but not limited to) agreements with:  Garmin International, Inc. (July 2013); Hanger, Inc. (October 2013); Virgin Pulse, Inc. (February, 2014); Kersh Risk Management, LLC (December 2014); Life Fitness (Brunswick Corporation) (April 2015); Technogym USA Corp. (August 2015); Aliphcom d/b/a JAWBONE (September 2015); and Johnson Health Tech Co., Ltd (September 2015).  Defendant did not disclose those (or any other such) agreements to Fitistics.

15

Defendant did not share the communications or drafts related to those (or any other such) deals with Fitistics.  Defendant did not pay Fitistics any monies he received based on those (or any other such) deals.  Discovery in this case has revealed that Defendant has received at least $499,000.00 (and likely more) from deals relating to the IP, while paying Fitistics nothing.

73.      Defendant's material breaches have resulted in a termination of the Agreement.

74.      Defendant's wrongful conduct has continued after Defendant's material breaches and consequent termination of the Agreement.

75.      Defendant's continued misrepresentations to, and dealings with, third parties regarding the IP have caused and will continue to cause irreparable harm to Fitistics.

76.      Defendant's refusal to deliver to Fitistics an acknowledgement that Fitistics owns the IP, and Defendant's ongoing assertion of possession, custody, and control over the IP, may have caused irreparable damage to Fitistics' future prospects of monetizing the IP.

77.      Fitistics has been harmed by Defendants conduct by virtue of, at a minimum: being deprived of amounts due and owing; being deprived of material information and documents pertaining to the amounts due and owing; being deprived of formal record title to, as well as possession, custody and control over, the IP; being deprived of the opportunity to monetize the IP for its own benefit; and by Defendant improperly licensing or waiving rights pertaining to the IP to third parties.

## COUNT I
### Declaratory Judgment of Intellectual Property Ownership and Demand for an Accounting and Injunctive Relief

78.      The allegations of paragraphs 1-77 above are incorporated as if fully set forth here.

16

79.     Defendant's past and ongoing actions and failures to act, including the refusal to pay amounts due, the refusal to provide material information, and the refusal to acknowledge Fitistics' ownership of the IP, give rise to a substantial controversy based on real and immediate threats of both past and future injury to Fitistics.

80.     Fitistics and Defendant have real and immediate adverse legal interests pertaining to ownership of the IP, the amounts due, and the information due.  Each claims to own the IP, and Defendant denies that Fitistics is entitled to the money and information due and owing.

81.     Fitistics is entitled to a declaratory judgment and injunctive relief to protect its interest in the IP and its entitlement to the money and information due and owing.

WHEREFORE, Fitistics prays for an order of judgment:

a)      declaring Fitistics the true and rightful owner of the IP;

b)      requiring Defendant to execute and deliver documentation sufficient to acknowledge Fitistics' ownership of the IP and to provide a full disclosure and accounting of all dealings and transactions with third parties related to the IP since the execution date of the Agreement;

c)      enjoining Defendant from engaging in any further activities whereby he purports to own or have any interest in the IP, including any dealings with third parties and litigation involving the IP;

d)      declaring that Defendant is legally obligated to pay the amounts due and owing;

e)      declaring that Defendant must provide the information due and owing;

f)      requiring Defendant to account for and disclose all of his activities and transactions since June 2013 involving, in whole or in part, the IP; and

17

g)      setting forth such other relief as the Court deems just and proper.

## COUNT II
## Breach of Contract

82.      The allegations of paragraphs 1-77 above are incorporated as if fully set forth here.

83.      The Agreement constituted a valid contract.

84.      As set forth earlier, Defendant has materially breached the Agreement. Defendant, by those and other acts, has also breached the implied covenant of good faith and fair dealing.

85.      Fitistics has been injured by Defendant's breaches of the Agreement by virtue of being deprived of amounts due and owing; being deprived of material information and documents pertaining to the amounts due and owing; being deprived of formal record title to, as well as possession, custody and control over, the IP; being deprived of the opportunity to monetize the IP for its own benefit; and possibly by Defendant improperly licensing or waiving rights pertaining to the IP to third parties.

WHEREFORE, Fitistics prays for an order of judgment:

a)      Awarding Fitistics $500,000.00, or such other amount that is sufficient to cover the injury caused by Defendant's past material breaches, which may well exceed $105,000.00;

b)      requiring Defendant to execute and deliver documentation sufficient to acknowledge Fitistics' ownership of the IP;

c)      enjoining Defendant from engaging in any further activities whereby he purports to own or have any interest in the IP, including any dealings with third parties and litigation involving the IP;

d)      requiring Defendant to provide the information due and owing;

e)      requiring Defendant to account for and disclose all of his activities and transactions since June 2013 involving, in whole or in part, the IP; and

f)      setting forth such other relief as the Court deems just and proper.

## COUNT III
### Breach of Fiduciary Duty and Demand for an Accounting and Rescission/Specific Performance

86.     The allegations of paragraphs 1-77 above are incorporated as if fully set forth here.

87.     Despite Fitistics' ownership of the IP, Defendant has continued to engage in activities holding himself out as the owner of the IP, including in dealings with third parties, courts, and the United States Patent and Trademark office.

88.     Defendant currently holds formal record title to the IP even though, as a matter of law and equity, the IP belongs to Fitistics.  Defendant is subject to a legal and equitable duty to formally reconvey the IP to Fitistics on several grounds, including the ground that he would be unjustly enriched if he were permitted to retain it.

89.     By holding himself out and acting as possessor, controller and custodian of the IP, Defendant, as a matter of law and equity, has assumed a fiduciary duty to Fitistics, the true and rightful owner of the IP, to care for, and to avoid waste and harm to, the IP and its value. Holding formal record title to the IP, Defendant has a duty to disclose all amounts received

19

relating to the IP and all related documents.  Unless and until Defendant ceases to claim record title, possession, custody and control over the IP, his duties include ensuring proper and careful development, use, management, enforcement, and licensing of the IP.

90.     On information and belief, Defendant has breached this fiduciary duty by misrepresenting the true ownership of the IP to third parties, being delinquent in proceedings as an attorney practicing before the United States Patent and Trademark Office pertaining to the IP, neglecting diligent pursuit of at least one enforcement action relating to the IP to the detriment of Fitistics, withholding from Fitistics information and income derived from the IP, and allowing third parties to license the IP for improperly low amounts.

91.     On information and belief, Defendant's breaches of fiduciary duty have been motivated by self-enrichment and self-dealing, willful, wanton, and with knowing and reckless indifference and disregard to the rights of Fitistics.

WHEREFORE, Fitistics prays for an order of judgment:

a)      awarding Fitistics $500,000.00, or such other amount that is sufficient to cover the injury caused by Defendant's breaches of duty, which may well exceed $500,000.00;

b)      awarding Fitistics punitive damages no less than $1,500,000.00, or such other amount that may be proved to be justified at trial;

c)      awarding Fitistics its reasonable attorney's fees, costs and expenses;

d)      requiring Defendant to execute and deliver documentation sufficient to acknowledge Fitistics' ownership of the IP;

e)      enjoining Defendant from engaging in any further activities whereby he purports to own or have any interest in the IP, including any dealings with third parties and litigation involving the IP;

f)      requiring Defendant to provide the information due and owing;

g)      requiring Defendant to account for and disclose all of his activities and transactions since June 2013 involving, in whole or in part, the IP; and

h)      setting forth such other relief as the Court deems just and proper.

## COUNT IV
### Conversion

92.     The allegations of paragraphs 1-77 above are incorporated as if fully set forth here.

93.     Defendant's ongoing claim to own the IP, his refusal to deliver funds and materials due and owing to Fitistics, and his ongoing activities based on his claim of formal record title, possession, custody and control of the IP, are a wrongful exercise or assumption of authority over Fitistics' property, depriving Fitistics of its rightful possession.  Defendant's actions of dominion over the IP are wrongfully exerted, in denial of and inconsistent with Fitistics' rights.

94.     On information and belief, Defendant's conversion has been motivated by self-enrichment and self-dealing, willful, wanton, and with knowing and reckless indifference and disregard to the rights of Fitistics.

WHEREFORE, Fitistics prays for an order of judgment:

a)      awarding Fitistics $500,000.00, or such other amount that is sufficient to cover the injury caused by Defendant's conversion, which may well exceed $500,000.00;

b)      awarding Fitistics punitive damages no less than $1,500,000.00, or such other amount that may be proved to be justified at trial;

c)      awarding Fitistics its reasonable costs and expenses;

d)      requiring Defendant to execute and deliver documentation sufficient to acknowledge Fitistics' ownership of the IP;

e)      enjoining Defendant from engaging in any further activities whereby he purports to own or have any interest in the IP, including any dealings with third parties and litigation involving the IP;

f)      requiring Defendant to provide the information due and owing;

g)      requiring Defendant to account for and disclose all of his activities and transactions since June 2013 involving, in whole or in part, the IP; and

h)      setting forth such other relief as the Court deems just and proper.

## COUNT V
## Fraud

95.      The allegations of paragraphs 1-77 above are incorporated as if fully set forth here.

96.      Even before the Agreement was executed, Defendant fraudulently induced Fitistics to enter into the Agreement by, among other things, concealing and misrepresenting facts about the Garmin agreement and related communications and dealings.

22

97.     Defendant fraudulently concealed and misrepresented facts about his many other agreements, dealings and communications with third parties that involved the IP, including, for most of them, whether they even existed.

98.     Fitistics reasonably relied on Defendant's knowingly false misrepresentations, assurances, and failures to disclose material information identified above to its detriment, causing a delay in Fitistics's opportunity to enforce its rights in the belief that Defendant was being truthful and acting in its best interest.  If Defendant had disclosed the concealed material information, including but not limited to the Garmin agreement and related communications and dealings with Garmin about the IP, Fitistics would not have entered into the Agreement and would have been able to protect its rights sooner.

99.     Fitistics has suffered harm as a result of Defendant's intentional misrepresentations, false assurances, and intentional failures to disclose and concealment of material information.

WHEREFORE, Fitistics prays for an order of judgment:

a)      awarding Fitistics $500,000.00, or such other amount that is sufficient to cover the injury caused by Defendant's fraud, which may well exceed 500,000.00;

b)      awarding Fitistics punitive damages no less than $1,500,000.00, or such other amount that may be proved to be justified at trial;

c)      awarding Fitistics its reasonable attorney's fees, costs and expenses;

d)      requiring Defendant to execute and deliver documentation sufficient to acknowledge Fitistics' ownership of the IP;

e)        enjoining Defendant from engaging in any further activities whereby he purports to own or have any interest in the IP, including any dealings with third parties and litigation involving the IP;

f)        requiring Defendant to provide information relating to the IP to which Fitistics is entitled;

g)        requiring Defendant to account for and disclose all of his activities and transactions since June 2013 involving, in whole or in part, the IP; and

h)        setting forth such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by a jury on all issues so triable in this Complaint.

Dated: September 2, 2016          /s/       John Ferman
                                  Quentin R. ("Rick") Corrie (VA Bar No. 14140)
                                  John D.V. Ferman (VA Bar No. 70980)
                                  Birch, Stewart, Kolasch & Birch, LLP
                                  8110 Gatehouse Road
                                  Suite 100 East
                                  Falls Church, Virginia 22042
                                  T. 703.205.8000
                                  qrc@bskb.com,
                                  jferman@bskb.com
                                  mailroom@bskb.com

24